Good morning. May I please the court? My name is Liana Harutyunyan, and I represent the petitioner in this case, Hasmik Movsesyan. And I would like to reserve two minutes for the rebuttal, please. That's fine. The main issues before this court today is the credibility findings of the immigration judge, which were subsequently the BIA affirmed the decision, and also the motive and the government actor factor required for the persecution. I had a hard time understanding the immigration judge opinion in this case because she said she was making an adverse credibility finding, but then she said, but I'm not saying that she wasn't having trouble with the Armenian government. And then she said, and then she starts going through all the details on a substantive basis as if she was crediting them. So where are we? I mean, is this actually an adverse credibility finding or not? That's exactly what the petitioner's basically position is. Although the immigration judge on the one hand went into discussion of how non-credible she was during the testimony, on the other hand he concluded, and this is a pre-Real ID Act, that he did believe the petitioner to be Pentecostal, basically she belonged to that faith, and also that she did suffer harm in Armenia at the hands of the government. Well, there's two things there. There's two findings there that the IJ accepted. One is that she's at least Pentecostal. That's correct. Okay, so he accepted that she's Pentecostal. There doesn't seem to be any reason to want to disbelieve her on that front. Correct. He was also willing to accept that she had problems with the authorities. But problems with the authorities doesn't mean that it's problems based on the fact that she's Pentecostal or that she has an imputed political belief or that she was of a particular ethnicity, which are the grounds for asylum. And his bottom line was she hasn't met her burden. So how do you overcome that? How can you show that she has met her burden when there were, quite demonstrably, a number of discrepancies in her testimony? It was very vague. It was very generalized. And there are times when she just simply has got her facts wrong. They're mixed up. That's correct, although there were some inconsistencies. However, when it comes to the motive, she did testify on numerous occasions. And the way the IJ characterized the testimony is that her problems were mostly related to the bribes that the family had to pay given the fact that her sister was living in the United States and she was sending the money so they could bribe and keep away the law enforcement and also the yer krapa, which also belongs to the part of the government since 1998. So the IJ focused on that, that his problem to finding the motive in relation to the protected ground was that the problems were mostly financial, like that they had to pay the bribe. But that's not enough, is it? That's not the case. That's sufficient. Sometimes financial deprivation rises to the level of persecution. That's a separate issue. But it's not persecution on account of a protected ground, such as religion or ethnicity. Yes, but the petitioner did testify several times during the direct examination. She also reiterated the same answer the same way during the cross-examination, that the main purpose, and she was asked that the problems were that they didn't allow somebody to worship freely in their home, and secondly, they were demanding money, and that's the record at 236. But going back to the basic question, don't we tell all the fact-finders in a jury trial, for example, we say to the jurors, you can believe all of what a witness says, you can believe some of it, or you can believe none of it. Don't we expect fact-finders to say, well, I believe some of this, and I believe other parts of it, but I don't believe the critical parts, and therefore she hasn't sustained her burden of proof? Isn't that what we charge fact-finders to do? Yes. However, that's confusing. Again, the immigration judge, on one hand, he says, I don't believe the petitioner, and on the other, he says, I do believe her. So that happens all the time, doesn't it? Did he say what he believed and what he didn't believe? He didn't believe the immigration judge actually pointed out the main problem was the inconsistent testimony, and also the... Yes, I know. But when he then said, yes, but I believe some of it, did he say what he believed? He believed her to be... I know he believed her to be Pentecostal, but what else? And that he suffered harm in Armenia. But he didn't say what harm, he didn't say why, he didn't say... No, he didn't articulate that in his decision. He says, I accept that she was a practicing Pentecostal in Armenia. Correct. And I accept that she had problems with the authorities in Armenia. That's right. And, however, and again, I think the issue is that petitioner did consistently testify in her, on a direct examination, and the cross that police people, district representatives, would prevent them from gathering, stop the meetings, and created problems, and demanded the money. And this is the record at 296. So she also presented testimony that... IJ is entitled to disbelieve her because she describes a number of incidents with the Armenian authorities, or somebody that looks like there may be Armenian authorities, and she doesn't do so consistently. She's inconsistent about the number of teeth that she lost. She's inconsistent about the number of times she was beaten. She's very, very vague in her answer. She has very, very little detail about what happened. That's correct. However, that takes us to the competency issue, and throughout the testimony, the judge, and I believe under the matter of MAM, the judge is charged to, if there is any indication of incompetency, he should have looked into it or further required or inquired. So you want the psychological evaluation to come in. That's correct. The psychological evaluation didn't say she was incompetent. It doesn't say she was incompetent, but it found that she suffers from anxiety disorder, agoraphobia, and also a group of psychological disorders, and that... Does anything in that psychological report suggest that she can't tell the truth? Yes. What suggests that she can't, that she won't tell the truth? Because she finds herself, like when she gets into panic attacks, like moans, she tends to apparently not to testify completely truthfully, and basically she does suffer. It rises to the level of depressive disorder, and that she's self-medicated. Right, but just because one is depressed doesn't mean that one isn't going to be truthful. Or is entitled to lie. I'm not saying that they're entitled to lie. However, again, the psychological report addresses that issue, why her statement could have been non-responsive. I see what the psychologist says, that she gets flustered. She makes bizarre statements. She gets flustered, has difficulty remembering her previously reported information because she gets overwhelmed easily due to her anxiety. But remembering her previously reported information is not a helpful statement by the psychologist. Because it suggests that what she's struggling to do is to try to remember what she's previously said. That's not the same as remembering facts. That suggests that she may be trying to remember to be consistent about how many times the police came to her house. That suggests that she may be making the story up. That's not a very helpful statement by the psychologist. It's not very reassuring by the psychologist. But the fact that she finds herself in a panic mode and people do tend to behave differently when they do have some disorders, that, of course, is something that needs to be further explored, I think, and looked into it. Especially at the time of- They go further and they say, actually, she doesn't suffer from memory loss. She doesn't suffer from the memory loss, but it was found that she does suffer from two disorders, agoraphobia and also the somatoform. And it's a group of psychological disorders in which the patient experiences physical symptoms. Doesn't it actually say that the immigration judge was correct in evaluating that she was, in fact, not telling the truth? It doesn't specifically say that, but- Well, it does say she makes up stories. She makes up the stories. It does say that it can be- To that extent, the immigration judge evaluation was accurate. I believe it's something that the person, if the petitioner makes deliberate false statements, that's one thing. But if she suffers from some kind of a disorder, psychological disorder, that leads her to- Well, what's the consequence of that? I mean, it doesn't mean she's believable. What does it mean that they should stay the proceedings or something? I mean, it doesn't make her believable. It makes her unbelievable. But then what do you do with that? Well, I think further fact-finding was required and the case should have been remanded because- To do what? I mean, suppose they agree that, in fact, she has this anxiety disorder and, therefore, she doesn't remember what she said before and she makes up stories. That doesn't make her believable. So what happens to the case at that point? I think because the judge believed part of her story, which he concluded that he did believe her to belong to the specific faith and also that she did suffer some problems, so any inconsistencies could be explained with her disorders that she is suffering. So, basically- Is she going to be medicated? I mean, what is it that you would like us to tell the BIA to do? To stay the proceedings until she's medicated so she can come back and have another opportunity to testify? That's correct because part of the inconsistencies, if there is any indicia of incompetency, the immigration judge was charged. And at the last hearing, when the issue was brought up by the former attorney that she was on a medication, she suffered from headaches, I think the immigration judge should have continued the proceedings at that point or raised the issue or inquired, at least, whether or not there was a competency issue that the former attorney wanted to raise at that point. But isn't it true that a lot of people get really, really nervous in court? And every time they get nervous, is that an out, well, I lied because I was nervous? It's not only the nerve. If that was only due to the nervousness, I think the psychologist would not have diagnosed her with the disorders. A depressive disorder? Yes. And it's basically their psychological report specifically says that she does suffer from the disorders, psychological disorders, that she needs to be medicated over the years. She didn't have an opportunity to seek any medical help because she didn't have an insurance. She couldn't find a doctor. And she self-treated and self-treatment. Well, self-treating means she took Tylenol. Tylenol is not going to do anything terrible to somebody. Tylenol was at the time of the hearing when aspirin, I believe, was the medication that she took at the time of the last hearing. And that's something that she claimed to have headaches. And that's when the former attorney actually brought it to the attention of the judge. Wasn't the report late? It was late. It was submitted with the appeal. However, I believe because the proceedings were concluded, the former attorney submitted that along with the appeal. However, I believe the board does the authority in certain circumstances to remand the case to allow the petitioner in this case. Don't they also have the authority to disregard it? Yes, they do have the authority. But given whatever ‑‑ I think the immigration judge's decision is very important because, again, on one hand he believes the petitioner, on the other hand he doesn't believe. And if there is any indication of incompetence, I think that issue could have been resolved with a remand and further fact-finding. Okay. Go ahead. I just have one last question. Counsel, the State Department reports and there's some other independent reports comment on the Pentecostal church in Armenia. None of them seem to identify any systematic discrimination against Pentecostals or other religions in Armenia. I understand the situation is tough in Armenia, but there isn't anything in particular about Pentecostals. Did you have any evidence that Pentecostals are persecuted in the way that, let's say, Chinese Christians are persecuted in Indonesia? Okay. I believe the country reports, and I addressed that in the brief, that it specifically says that there are a lot of people who are afraid to come forward and file the complaints because they fear the retribution. And it's not just because there are no specific reports pertaining to Pentecostals. It doesn't mean that harm persecution doesn't exist. As a matter of fact, Armenian church is very dominant when it comes to the faith in Armenia. And a lot of people, 99 percent of the population, actually dislikes, actually discriminates, and if possibly they would get rid of the sects as they call the minority religious groups. A lot of media, and there is evidence in a record that was previously submitted by the former attorney, that shows that basically eight major media groups, they were allowed to comment on the Pentecostal faith, and they considered this to be basically evil, that they brainwashed the people, the children. But we have those allegations here in the United States by various sects against other religions. But it's just unusual. We look at a lot of country reports, and even when we have a very, very small religious minority, if there is evidence of discrimination there, usually somebody's figured this out. Yes, but for instance, the situation with the petitioner's son. Basically, the family had to pay a bribe for him to be stayed in the kitchen, and sometimes the immigration judge in his decision, he indicated that the son basically, there was an alternative service. There is a law that protects people of religious minorities in Armenia, which is not the case. There is a record presented by the petitioner that people belonging to minorities, they prefer who have an ability under the law in Armenia to undergo alternative service, they prefer to go to prison versus going and participating in the army, in the alternative service, because the military still retains the administrative control over these people, and they're so afraid that they prefer to stay in prison to get a prison sentence versus actually participate, like going to the army. Okay, you're way over your time, so thank you. Thank you. Thank you. May it please the Court, my name is Nilam Isinula, and I represent the Attorney General in this matter. The Court should deny the petition for review because substantial evidence supports the agency's determination that Ms. Moussassian was not a credible witness. The Court should uphold the adverse credibility determination, so long as at least one of the reasons the I.J. identified for finding Ms. Moussassian not credible is supported by substantial evidence and goes to the heart of her claim. Here the I.J. identified a number of problems in Ms. Moussassian's testimony. Let me go back and say again what I said before. He said that. Then he said, but I believe she's Pentecostal, and I believe she had problems with the authorities. What I don't believe is that she's proven with adequate evidence that those problems had to do with a protected class. But the inconsistencies he identified didn't have to do with whether it was a protected class. It had to do with what happened, right? So we don't know what he ultimately thought happened. He thought something. He thought things happened. And when he writes through the rest of the opinion where he talks about what might be other explanations for the things that happened, he seemed to be accepting her story. So he says he's not believing it, but it appears that he is believing it, at least in the category of what occurred. What he doesn't believe is that it was because she was Pentecostal. So the opinion doesn't, I don't know what to do with it. It doesn't make any sense to me. No, that particular language is somewhat confusing, but I think the IJ divides his opinion up into two different sections. You think it was an alternative finding that said even if you believe everything she said, it's not what he said. He said, I believe some of it, but he didn't say what he believed. He said, what I don't believe is that it was for this reason. And this is the problem. Then the reasons he gave for not believing it was for this reason, those don't make a lot of sense to me. I understand his credibility finding some, although on the teeth thing, I think what she ultimately said was, well, they were loose. Some wouldn't fall out and some were loose and so on. But as to why he didn't believe that it was on account of, there I have a problem. The IJ does make a pretty explicit credibility finding. At page 83 of the record, he explicitly says, the court finds that respondent's testimony was not credible. But you're right. There's that language in there also saying the court doesn't know what parts of her testimony to believe. I think that's still adverse credibility language. But then he says, you know, I believe she's a Pentecostal. I believe she may have been harmed. I don't think she said may. I think she said she was. Let me look. But it is may in that second sentence. Let me see. I'm not sure either. Page 84. She may have had problems with authorities, but she hasn't met her burden of proving that her problems were on account of her religion. And then he goes on and says that they may have questions why they were extorting money and whether really her son had this military problem because of his religion, as opposed to for some other reason. Go ahead. That second holding nexus, the IJ is assuming the truth of those allegations. He's not discrediting the idea that there were two attacks at her home by the Yerkepah. He's just saying, I don't believe that those attacks were due to your religion. Well, that's right. But the reasons he gave for not believing her went to whether the attacks ever occurred at all. That's why there just seems to be sort of incoherence here. Well, because it's an alternative holding. The Court goes from he doesn't use that language, but he doesn't discredit any portion of that testimony in that second half. And that paragraph is the preface to that alternative nexus holding. He believes for this purpose of nexus, he believes she was hurt and her family was targeted by the Yerkepah. But he's talking about why did the Yerkepah target you. So it is an alternative holding. But I do agree that language is confusing. Let me ask you another question. So every now and again, a fact finder gets some witness before them, and they are just not making any sense. They're just nutty. And the fact finder looks and says, I can't believe, I don't know what to believe about this witness. She's acting crazy. And then they get a report that comes in, and it explains it. It says she's got a psychological condition. And shouldn't the BIA, even on appeal, have looked at that and said, you know, that explains the problems that this witness was having. And we want to remand this back to the immigration judge to be fair to her. We're talking about taking someone and deporting them out of the country. We want to be fair before we do that. What's your reaction to that? The board was limited as an appellate body. It can't consider new evidence on appeal. And Ms. Movesian's attorney, her board brief doesn't ask for reopening or remand. She only asks that the new evidence be considered by the board as part of adjudicating the appeal. So she doesn't make any case for reopening and sending the case back to the IJ for fact finding. She's telling the board to do that. And so the board's hands were tied. And without knowing why this was new material, previously unavailable, not able to be discovered evidence, why should they grant reopening? And as was pointed out during the earlier testimony, that evaluation has some language that certainly hurts Ms. Movesian in terms of the fact that it only diagnoses her with anxiety and depression, not otherwise specified. And anxiety certainly doesn't explain all the discrepancies and problems in Ms. Movesian's testimony. For instance, you know, the IJ found it problematic that her declaration, written declaration, didn't contain any mention of the significant injuries that she incurred during the two attacks by the Yoruba. And how does anxiety explain away that important discrepancy? In addition, as noted, her testimony was very vague and about things that you would think she'd have details about. The detention by the KGB officers was apparently a nine- to ten-day ordeal, but she couldn't provide any more clear testimony than the fact that she was threatened, she was called a traitor, and she was asked about how she had gotten to Amsterdam, who helped her. But in terms of what she said, her testimony boils down to this statement, they would beat me and threaten me and strike me, and that's about as detailed as her testimony gets. She was asked a number of times in cross-examination how exactly she had been threatened, but all she said was they had a harsh manner. The manner in and of itself was threatening, and they would call me a traitor. They would emphasize I was a traitor. But then on redirect, she says something new. She says that the KGB agents had also threatened to kill her, and this is completely in contradiction to her written declaration, where she says not that the KGB agents made a death threat, but they told her they were going to detain her indefinitely. So the I.J. reasonably found that these inconsistencies and the lack of specificity in her testimony made her not credible. And as I argued earlier, I believe that the Nexus finding is an alternative holding by the court, by the I.J., and should be affirmed under substantial evidence review. The I.J.'s... Well, the I.J.'s done two different things. He has a whole section that says, look, I've got to do credibility before I do anything else. Then the section where he says, I believe she's Pentecostal comes when he gets to deciding the asylum claim. And he says, yeah, I'm willing to accept that she's Pentecostal, but there's nothing here that relates to the grounds, and besides that, I don't believe her anyway. I think that's an encapsulation of what the immigration judge did. But I do think that it's an alternative holding that stands on its own, apart from the credibility determination, because the I.J. immigration judge is accepting the truth of the allegations. The immigration judge found not that she had been harmed by the Yercapa because of her religion, but because she was perceived to have money. The Yercapa knew she had money because they knew she had relatives in the United States, and because she had successfully bribed her son's military commanders when he was in the military from 2000 to 2002. A number of factors support the immigration judge's nexus determination. Ms. Movesian herself testified that from her conversion in 1987 up until 2002 when her son was discharged, she was never physically harmed. She states, quote, they did not harm us, but they would always come and harass us. The only serious physical harm she endured was 2002 onwards, until she left Armenia. And the fact that the Yercapa were, that she was not physically harmed until 2002 suggests that the Yercapa were only motivated by money. The 2002 seems to be a clear dividing line. What comes before is low-level harassment, and after 2002 is physical violence when the Yercapa want money and they don't get it. While the 2002, pre-2002 harassment might have involved her religion in that they were dispersing religious meetings, trying to at least, she doesn't make it sound like their efforts were successful. The post-2002 events are definitely different in nature from what came before, and the IJ was reasonable in concluding that the difference in severity of the harm had a different motivation, that the Yercapa were displeased to have their source of revenue cut off and would do anything to get their money. Ms. Movesian's declaration herself suggests a causal link between her son's discharge and the harm that befell her and her family starting in 2002. She says in her declaration regarding her son, quote, when he was released from the army after two years of service, we became targets of Yercapa for extortion of money. And as we talked about earlier, what was discussed earlier, the country condition reports don't support, don't corroborate the idea that persecution of Armenians, of Armenian Pentecostals in Armenia occurs. There's discrimination, there's negative attitudes, but as the UNHCR report that the IJ cited indicates, there have not been violent acts towards religious minorities in the last few years. The last violent incident was in 1995, so for a decade at least, there have been no violent incidents reported. And I'm sorry, I'm sorry I took, I'm over my time. In conclusion, the court should deny the petition for review and affirm both the adverse credibility and nexus determinations. Thank you. Thank you for your argument. I'll give you one minute, because you went way over, over a little too. So go ahead. But really, one minute. Can I ask you a question? The BIA cites 8 CFR section 1003.1 D34 as a regulation that prohibits them from considering the psychological report unless it's newly discovered evidence. Is that correct? Were they correct in that citation? They can't? She just said they couldn't consider it. Well, based on that section, they, I think if the psychological report is considered an official document, then they certainly can. And besides that, I think if they were reviewing the IJ's decision de novo, they should have noticed that throughout the, along with the psychological report, that there wasn't, and the BIA was reviewing the entire record, the transcript, they could have seen that there was an indicia of incompetency, and that was raised by the former attorney. That alone should have, along with the report, should have prompted the BIA to remand the case, because the IJ, under the competency rule enunciated in MAM, is charged with exploring if there is any indicia of incompetency. And I think even if that section does not specifically allow them to consider a report, I think that entire record taken together with the psychological report should have warranted the remand. And the specific question was to whether it was new evidence, and I guess it was new evidence because it wasn't, it was after, you know, it was a report and it was written in an examination that was done after the. That's correct, because the proceedings were concluded. However, my point. But also the problem was generated by the hearing itself, so there was no reason, I guess, to support it or to submit it earlier. Yes. However, your time is up. You didn't get to say anything you want to say. Do you want to say one sentence? Yes, I wanted to address the fact, like, very briefly. As far as the injuries, I think the judge gave very, like, too much weight to the injuries, the fact that they were not listed in a declaration went to, like, were central to the omission when he was assessing the credibility. And I think that's not the case because he cited Zamanov's case in support of his finding. I believe Zamanov is misplaced. This case is more false under Smolniakova v. Gonzalez. It's a Ninth Circuit case where the court found that mistreated, when the applicant lists in her declaration that she's mistreated and threatened and subsequently provides details about the instances of harm that she suffered, that by itself, the fact that it was not mentioned in the declaration, does not render her testimony inconsistent. Okay. Thank you very much. Thank you very much. Thank you both for your argument. Mostenian v. Sessions is submitted. We'll go to Chavez v. J.P. Morgan.
judges: Berzon, Bybee, Woodcock